**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AQEEL AL SHUWAILI,**<br>**Plaintiff,**<br>**v.**<br>**MARCO RUBIO in his official capacity as SECRETARY OF STATE OF THE UNITED STATES, *et al.*,**<br>**Defendants.** | **Case No. 25–cv–08016–ESK**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

Immigration law provides sequential tracts for an applicant to seek to become a naturalized citizen. Typically, naturalization is within the province of the Attorney General and United States Citizenship and Immigration Services (USCIS) employees as designees. If an application remains undetermined 120 days after their examination, the applicant may seek a determination from a district court. Plaintiff here, Aqeel Al Shuwaili, sought to avail himself of this latter tract after his application remained pending for more than nine months. Six months later, defendants initiated removal proceedings and now seek to dismiss the complaint, arguing that removal proceedings deprive the Court of jurisdiction. I do not read the applicable statutes the same way. Because my jurisdiction is exclusive and the statute cited by defendants has not been implicated by removal proceedings as initiated and—even when applicable—binds only the Attorney General, defendants' motion to dismiss will be denied. The Court intends to hold an evidentiary hearing and render a determination on Al Shuwaili's application.

# I. BACKGROUND

## A. The Complaint

Al Shuwaili is a lawful permanent resident of the United States who resides in New Jersey. (ECF No. 1 (Compl.) p. 3.) Defendants are federal agencies and federal officials sued in their official capacities. (*Id.* pp. 3, 4)[1]

Al Shuwaili acquired lawful permanent resident status on April 30, 2019. (*Id.* p. 5.) Defendant USCIS acknowledged receipt of Al Shuwaili's N–400 application on February 12, 2024. (*Id.*) His naturalization interview was held at USCIS's Mount Laurel field office on August 12, 2024, at the conclusion of which he was notified that he had passed his examination and his application was recommended for approval. (*Id.*)

The application was thereafter held for security checks and—more than 120 days having passed—Al Shuwaili contends that this Court has exclusive jurisdiction over his application. (*Id.*) He seeks relief including the Court's exercise of jurisdiction; *de novo* review and grant of his application; a declaration that defendants' policies, practices, and customs are violative of the Constitution and various statutes; and fees and costs. (*Id.* p. 8.)

## B. Procedural History

Al Shuwaili filed his complaint on June 6, 2025. (*See generally id.*) Defendants wrote to the Court on September 29, 2025 representing that USCIS maintained concurrent jurisdiction over the application and that Al Shuwaili was offered to attend an interview with USCIS but declined. (ECF No. 7.) Defendants sought a status conference and asserted that adjudication in Al Shuwaili's favor would result in an amicable resolution while a denial would moot the case or prompt a stay. (*Id.* p. 2.) Al Shuwaili responded that the

[1] Insofar as named defendants were public officers who no longer hold their positions, they have been automatically substituted by their successors. *See* Fed. R. Civ. P. 25(d); *Spence v. Foxx*, 159 F. Supp. 3d 483, 487 n. 1 (D.N.J. 2014).

Court's jurisdiction is exclusive, but that he would concede concurrent jurisdiction for the limited purpose of granting his application. (ECF No. 9 pp. 1, 2.) USCIS had indicated that it sought to learn whether Al Shuwaili was "properly admitted for lawful permanent residence" and refused to provide the scope of any re-interview or any derogatory information in its possession. (*Id.* p. 2.)

I held a status conference on October 22, 2025. (ECF No. 13.) Following the conference, I entered an order preliminarily determining that the Court possesses exclusive jurisdiction over Al Shuwaili's application. (ECF No. 14 (Oct. 22, 2025 Order).) I provided defendants an extension to answer or otherwise respond to the complaint and prohibited further action on the application. (*Id.*)

Defendants again wrote to the Court on December 15, 2025 seeking to confirm whether defendant United States Department of Homeland Security (DHS) could issue a notice to appear without violating the October 22, 2025 order. (ECF No. 17 (Defs.' Dec. 15, 2025 Letter).) Defendants represented that Al Shuwaili obtained lawful permanent resident status on January 13, 2021[2] and that they had five years—or until January 13, 2026—to place him in removal proceedings. (*Id.* pp. 1, 2.) They further asserted that issuance of a notice to appear would limit the Court's jurisdiction over the application and—if permitted—likely result in defendants moving for dismissal. (*Id.* pp. 2, 3.) I held a status conference on December 29, 2025 (ECF No. 22) and thereafter

[2] The January 13, 2021 date relied on by defendants in initiating purportedly timely removal proceedings (Defs.' Dec. 15, 2025 Letter p. 2) is nearly two years after the date Al Shuwaili alleges he obtained lawful permanent resident status (Compl. p. 5). Al Shuwaili repeated this assertion in a December 17, 2025 opposition letter (ECF No. 19 p. 3) but does not otherwise argue that removal is untimely in his opposition to defendants' motion. Because I find that dismissal is unwarranted even assuming that the notice to appear was timely, I do not address the apparent factual issue of when Al Shuwaili obtained lawful permanent resident status, which is both inappropriate for dismissal motion practice and was not briefed by the parties.

advised that issuance of a notice to appear would not violate the October 22, 2025 order (ECF No. 23 (Dec. 29, 2025 Order)).

The pending motion to dismiss followed (ECF No. 24) to which Al Shuwaili has filed an opposition (ECF No. 27 (Al Shuwaili's Opp'n Br.))[3] and defendants replied (ECF No. 29 (Defs.' Reply Br.)). In the midst of motion practice, I entered an order on January 22, 2026 preliminarily concluding that the issuance of a notice to appear—as opposed to a warrant of arrest—did not trigger the limitations of 8 U.S.C. § (Section) 1429 as argued by defendants. (ECF No. 26 (Jan. 22, 2026 Order) p. 2.) This order was entered for the limited purpose of preserving the parties' rights and expressly did not prejudge defendants' arguments in support of dismissal. (*Id.*)

Separately, on December 24, 2025, Al Shuwaili wrote to the Court indicating that defendants had repeatedly refused to produce the administrative record. (ECF No. 21 p. 1.) Al Shuwaili argued that production of the administrative record would reveal the alleged basis supporting his removability, indicate whether DHS has proceeded in bad faith, and ultimately exculpate him. (*Id.*) I permitted Al Shuwaili to file a formal discovery motion following the government's response to the complaint. (Dec. 29, 2025 Order.) The pending motion to compel followed (ECF No. 28), to which defendants have filed an opposition (ECF No. 32 (Defs.' Opp'n Mot. Compel)) and Al Shuwaili has replied (ECF No. 33).

## II. STANDARD AND PARTY ARGUMENTS

### A. <u>Motions to Dismiss</u>

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction or for failure to state

[3] Al Shuwaili submitted his original opposition on January 20, 2026 (ECF No. 25) but thereafter advised that the version submitted was a draft (Al Shuwaili's Opp'n Br. p. 1). The Court refers to the more recent, corrected filing.

a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Subject matter jurisdiction may be attacked facially or factually through a motion to dismiss pursuant to Rule 12(b)(1). *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations underlying the complaint's assertion of jurisdiction and permits the court to consider and weigh evidence outside of the pleadings without presuming the truthfulness of the allegations. *Id.* A facial attack challenges jurisdiction without contesting the factual allegations and, similar to a Rule 12(b)(6) motion, requires the court to consider the complaint's allegations as true. *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 n.7 (3d Cir. 2024).

### B. Party Arguments

Defendants submit that, pursuant to Section 1429, DHS is unable to consider Al Shuwaili's application while removal proceedings are pending. (ECF No. 24–1 (Defs.' Mot. Br.) p.10.) The Court's ability to grant relief cannot be greater than that of the Attorney General. (*Id.* pp.10, 11.) The Court's

retention of jurisdiction would also violate the principle that removal proceedings are given priority over naturalization. (*Id.* p. 11.) To the extent that Al Shuwaili asserts mandamus jurisdiction, defendants contend that they owe him no duty to act and that they are prohibited from considering the application while removal proceedings are pending. (*Id.* p. 12.) If the Court finds that it has jurisdiction, defendants ask that it remand to USCIS. (*Id.* pp. 13–17.) Defendants opine that the Court need not resolve a split in authority over whether it possesses exclusive or concurrent jurisdiction because remand is a preferred outcome in such cases. (*Id.*)

Defendants' Section 1429 arguments are misleading, according to Al Shuwaili, as no warrant of arrest has been issued and his application remains pending. (Al Shuwaili's Opp'n Br. pp. 2, 3.) Section 1447(b) confers jurisdiction to the Court and divests jurisdiction from USCIS, after which the Court may make a determination on the application or remand with instructions. (*Id.* pp. 4, 5.) Al Shuwaili contends that the notice to appear is a stall tactic and defendants have acted in bad faith by refusing to provide evidence supporting removal. (*Id.* p. 5.) The Court should therefore be emboldened to consider the application itself. (*Id.*)

## III. DISCUSSION

### A. The Court's Jurisdiction is Exclusive

Though defendants opine that I need not determine whether my jurisdiction is exclusive or concurrent (Defs.' Mot. Br. p. 13), I have already preliminary concluded that it is exclusive (Oct. 22, 2025 Order). I further find that determination of whether I have exclusive jurisdiction is necessary for the purposes of the forthcoming analysis.

Up until 1990, the authority to naturalize applicants was held by courts while the authority to remove belonged to the Attorney General. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012). The

authority to naturalize shifted to the Attorney General as part of the Immigration Act of 1990. *Id.*; *see also* 8 U.S.C. §1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."). Courts nonetheless maintain a role in naturalization when there is a delay in rendering a decision (Section 1447(b)) or when an applicant wishes to challenge a denial (Section 1421(c)). *See* John Harland Giammatteo, *A Poll Tax by Another Name: Considering the Constitutionality of Conditioning Naturalization and the "Right to Have Rights" on an Availability to Pay*, 95 NYU L. Rev. Online 259, 264 (2020); *see also Yith v. Nielsen*, 343 F. Supp. 3d 938, 949 (E.D. Cal. 2018) ("Congress gave the last word to the district courts for delayed or denied applications." (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004))). The focus here is on Section 1447(b).

Pursuant to Section 1446, the Attorney General shall designate USCIS employees to conduct examinations of naturalization applicants and make related determinations. 8 U.S.C. §1446(b), (d); *Onyekwuluje v. Jaddou*, Case No. 23–00412, 2023 WL 2589215, at *4 (E.D. Pa. Mar. 21, 2023). If a determination is not made within 120 days of the examination, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. §1447(b). The district court thereafter "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." *Id.*

There is no qualification placed on the district court's jurisdiction or its ability to thereafter render a determination. And it would be illogical to read one into the statute. *See Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014). Further, "it would render meaningless the district court's power to 'remand the matter' if the agency could act even without a remand." *Id.*; *see also Haroun v. U.S. Dep't of Homeland Sec.*, 929 F.3d 1007, 1010 (8th Cir. 2019) (finding

that, if USCIS was able to rule on an application while the district court has jurisdiction, it would undermine the district court's authority to remand with specific instructions). The district court's ability to remand to USCIS itself "indicates that Congress intended a hierarchy." *Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007).

If this hierarchy created by Section 1447(b) serves to grant jurisdiction to the district court, then it naturally also serves to divest USCIS of jurisdiction. *See Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009) ("By providing the district court with the option to 'remand the matter, with appropriate instructions, to [USCIS],' Congress intended that, after an applicant files a proper Section 1447(b) petition, USCIS would lack the authority to decide an application absent a remand.") (alteration in original) (quoting 8 U.S.C. § 1447(b))). "[O]nce a district court obtains jurisdiction to decide a naturalization application under § 1447(b), the USCIS regains authority to grant or deny the application only if the district court remands the matter back down to it." *Haroun*, 929 F.3d at 1011. Accordingly, district courts have held that once the district court obtains jurisdiction pursuant to Section 1447(b), USCIS is without authority to rule on the application. *See, e.g.*, *Edobor v. Onyango*, 944 F. Supp. 2d 1338, 1343–44 (N.D. Ga. 2013); *Omar v. Holder*, 756 F. Supp. 2d 887, 893 (S.D. Ohio 2010).

Defendants are correct that the Third Circuit has not waded into the issue of exclusive jurisdiction, but the weight of persuasive authority pulls me toward that direction. In fact, "[e]very federal appellate court that has squarely addressed the issue has decided that the court's jurisdiction under § 1447(b) is exclusive." *Bryan v. U.S. Citizenship and Immigr. Servs.*, 740 F. Supp. 3d 86, 88 n. 4 (D.N.H. 2024). Defendants do not bring contradictory authority to my

attention and I have not found any myself.[4] The Third Circuit has found persuasive the cumulative decisions of fellow circuit courts. *See, e.g.*, *Figueroa v. Blackburn*, 208 F.3d 435, 442 (3d Cir. 2000) (finding persuasive the fact that all other circuit courts that had been presented with the issue reached the same conclusion). I, too, am persuaded by the weight and reasoning of out-of-circuit courts. *See Martinez v. Johnson*, 104 F. Supp. 3d 835, 839 (W.D. Texas 2015) (finding out-of-circuit decisions persuasive in determining that Section 1447(b) vests the district court with exclusive jurisdiction).

Though defendants believe that I need not decide whether I have exclusive or concurrent jurisdiction, they nonetheless advocate for concurrent jurisdiction, citing two cases from within this District for support: *Perry v. Gonzalez*, 472 F. Supp. 2d 623 (D.N.J. 2007) and *Becker v. Chertoff*, Case No. 06–01599, 2006 WL 2128132 (D.N.J. July 26, 2006). (Defs.' Mot. Br. pp. 15, 16.) These decisions do not bind me, *see Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017), and I find them to be of little persuasive value.

The complaint in *Becker* was deemed mooted by the defendants' subsequent determination and naturalization of the plaintiff. 2006 WL 2128132, at *2. As defendants note, the decision—at best—impliedly accepts concurrent jurisdiction. (*See* Defs.' Mot. Br. p. 15.)

*Perry*, though purportedly directly on-point, (*id.*), is not substantially more persuasive. That case, too, involved a post-complaint decision granting the plaintiff naturalization. 472 F. Supp. 2d at 626. Important to the court was Congress's intent to reduce waiting times for nationalization applicants. *Id.* at 629. In critiquing the decision in *Hovsepian*, the court found that the Ninth Circuit "fail[ed] to recognize the preservation of judicial resources when

[4] Though not cited by the parties, the Court has reviewed in its research the Sixth Circuit's recent decision in *Ebu v. United States Citizenship and Immigration Services*, 134 F.4th 895 (6th Cir. 2025). *Ebu* is most relevant in the interplay between Section 1447(b) and Section 1429 and will be discussed in that context below.

[USCIS] grants a naturalization application while the matter is pending in the district court, as occurred in the instant case." *Id.* The facts are distinguishable here as defendants submit that Al Shuwaili is removable and have scheduled a master calendar hearing with his application still pending. (Defs.' Mot. Br. pp. 6, 7.)

This is not to say that whether the Court's jurisdiction is exclusive or concurrent depends on USCIS's decision, actual or anticipated. Rather, I acknowledge that the facts and efficiency considerations animating *Perry* are distinguishable from those here. *Perry* further did not have the benefit of a growing list of circuit decisions on the subject. For instance, *Perry* frequently cites the District of Maryland decision in *Etape*. 472 F. Supp. 2d at 628–30. That decision was reversed just six months later, with the Fourth Circuit holding that Section 1447(b) provides the district court with exclusive jurisdiction over the naturalization application. *Etape*, 497 F.3d at 385.

I am persuaded by the reasoning of *Etape* and the weight of authority that has followed after it. My jurisdiction is exclusive and USCIS is without authority to make a determination on Al Shuwaili's application unless and until I remand the matter to it. *See Haroun*, 929 F.3d at 1011.

### B. Section 1429 Does Not Strip the Court of Its Jurisdiction

Having found that my jurisdiction is exclusive under Section 1447(b), I must next determine whether Section 1429 nonetheless divests that jurisdiction. Defendants believe so. But because Section 1429 has not been properly invoked here and, even if it has, it binds only the Attorney General, I disagree. I address both of these points in turn.

#### 1. No Warrant of Arrest Was Issued

The prior delineation between courts' power to naturalize and the Attorney General's power to remove "sometimes led to 'a race between the alien

to gain citizenship and the Attorney General to deport him.'" *Gonzalez*, 678 F.3d 257 (quoting *Shomberg v. United States*, 348 U.S. 540, 544 (1955)). To end this race, Congress enacted Section 1429, originally prohibiting a naturalization petition from being heard by a "naturalization court" if a deportation proceeding was pending. *Id.* (quoting 8 U.S.C. §1429 (1952)). With the changes brought on by the Immigration Act of 1990, the prohibition directed toward naturalization courts was redirected toward the Attorney General. *Id.*

Today, "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act …" 8 U.S.C. §1429. Further, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." *Id.* Defendants rely on the latter provision, representing that a notice to appear was issued on December 30, 2025. (Defs.' Reply Br. pp. 1, 2.)

Of course, Section 1429 refers to a warrant of arrest. When interpreting a statute, courts look to the text's plain meaning and where the text is unambiguous, the inquiry ends. *Sec'y U.S. Dep't of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 130 (3d Cir. 2019). Black's Law Dictionary's definition of "warrant of arrest" refers to the definition of "arrest warrant," Warrant of Arrest, Black's Law Dictionary (12th ed. 2024), which in turn is defined as "[a] warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody," Warrant, Black's Law Dictionary (12th ed. 2024). This definition is consistent with the Immigration and Nationality Act itself, which provides that on a warrant issued by the Attorney General, "an alien may be

arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

A notice to appear is "[a] summons or writ by which a person is cited to appear in court." Notice to Appear, Black's Law Dictionary (12th ed. 2024). This definition is also consistent with the Immigration and Nationality Act, which provides that a notice to appear shall be provided in removal proceedings specifying information such as the nature of the proceedings, the legal authority under which proceedings will be conducted, and the alleged violative acts or conduct. 8 U.S.C. § 1229(a).

I conclude that the terms are plainly distinct. A warrant of arrest is actionable; it authorizes the arrest and detention of a person. A notice to appear is informational; it provides details such as the relevant proceedings and related bases, akin to a summons.

I intimated this position during briefing. In the January 22, 2026 order, I "preliminarily conclude[d] that the notice to appear issued on December 30, 2025 does not trigger the limitations of Section 1429 as argued by defendants." (Jan. 22, 2026 Order p. 2.) In apparent response, defendants maintain that a notice to appear "shall be regarded as a warrant of arrest," citing 8 C.F.R. § 318.1. and the Seventh Circuit's decision in *Klene v. Napolitano*, 697 F.3d 666 (7th Cir. 2012). (Defs.' Reply Br. p. 2.) The former provides that "a notice to appear … shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1. The Seventh Circuit in *Klene* deferred to that definition, concluding that "[a]n agency … can define its own vocabulary." 697 F.3d at 670.

More persuasive is the Ninth Circuit's analysis in *Yith v. Nielsen*, cited in the January 22, 2026 order, which undertook an interpretive analysis of Section 1429. 881 F.3d 1155, 1165–68 (9th Cir. 2018). As I have above, the court looked to the dictionary and statutory definitions of terms and concluded that "warrant of arrest" is unambiguous and distinct from a notice to appear. *Id.*

at 1166–67. As such, *Yith* departed from the reasoning in *Klene*, which did not conduct an interpretive analysis in adopting 8 C.F.R. § 318.1's definition. *Id.* at 1168.

Because the plaintiffs in *Yith* received notices to appear rather than warrants of arrest, Section 1429 was inapplicable. *Id.* District courts have since followed the reasoning of *Yith*, concluding that 8 C.F.R. § 318.1 does not reasonably interpret "warrant of arrest" as referenced in Section 1429. *See, e.g.*, *Adegbesote v. Tritten*, Case No. 20–01940, 2021 WL 5995198, at *6 (D. Minn. June 2, 2021); *Murray v. Cissna*, Case No. 18–02059, 2019 WL 2358951, at *3 (D.S.C. June 4, 2019).

It is worth noting that these decisions were reached during the bygone era of *Chevron* deference. "This Court owes no deference to an agency interpretation that conflicts with the statute's unambiguous text." *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025). I find that 8 C.F.R. § 318.1 clearly conflicts with Section 1429's text. I therefore decline defendants' invitation to find that my eyes deceive me and two distinct terms with distinct definitions mean the same thing simply because they have said so.

Beyond the clear definition of "warrant of arrest," my interpretation is also more workable in the context of removal proceedings as a whole. All removal proceedings are commenced by the filing of a notice to appear with the immigration court. 8 C.F.R. § 1239.1(a); *A.A. v. Att'y Gen. U.S.*, 973 F.3d 171, 178 n.5 (3d Cir. 2020). It would thus make little sense for Congress to have premised the inability of the Attorney General to consider a naturalization application "pursuant to a warrant of arrest" when a notice to appear—common to all removal proceedings—would serve just as well. *See Yith*, 881 F.3d at 1167 ("If Congress intended to preclude the government's consideration of a naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a

removal proceeding is 'pursuant to a warrant of arrest.'"). "Under normal canons of statutory construction, 'courts should construe statutory language to avoid interpretations that would render any phrase superfluous.'" *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023) (quoting *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005)). I do so here.

Because I find that a "warrant of arrest" as referred to in Section 1429 is distinct from the notice to appear issued here, Section 1429 is inapplicable. *See Yith*, 881 F.3d at 1168. The notice to appear does not serve as a barrier to the Court granting relief.

### 2. <u>Section 1429 Refers Only the Attorney General</u>

Defendants maintain that Section 1429's prohibition on the Attorney General also applies to courts. (Defs.' Mot. Br. pp. 10, 11.) Though I have concluded above that Section 1429 is inapplicable because no warrant of arrest has been issued, I find it necessary to address defendants' argument both as an alternate basis for denying their motion and because of the relief that will follow.

Here, too, *Yith* offers simple, persuasive guidance. The relevant portion of Section 1429 refers only to the Attorney General and thus it restricts the Attorney General without limiting the district court's power to naturalize. *Yith*, 881 F.3d at 1161. This interpretation is logical both in reading Section 1429 as a whole and in its historical context. *Id.* at 1161–62. After all, Congress referred to courts when Section 1429 was first enacted and that reference was removed and replaced with "Attorney General" in 1990. *Id.* at 1162 ("Nothing in the 1990 amendments suggests that Congress intended to preserve the 1952 act's bar on a district court naturalizing applicants while removal proceedings are pending, and Congress's decision to remove the provision suggests it wanted to end such a bar."). This reasoning, too, has

since been adopted by fellow district courts. *See, e.g.*, *Gardener v. Barr*, Case No. 18–00620, 2019 WL 1001340, at *4 (E.D. Mo. Mar. 1, 2019); *Del Valle v. Nielsen*, Case No. 18–21230, 2018 WL 4604287, *3 (S.D. Fla. Sept. 24, 2018).

The Sixth Circuit's recent decision in *Ebu* serves as a notable exception. *Ebu* acknowledged that Section 1429 does not refer to courts but concluded that a "harmonious reading" of Section 1429 and Section 1447(b) meant that removal was to be prioritized over naturalization no matter the decisionmaker. 134 F.4th at 899. The 1990 amendments limited courts' naturalization power. *Id.* at 901. This conclusion was the only logical one, according to the court, because—as the appellant acknowledged—remand was not a viable option with removal proceedings pending and thus Section 1447(b)'s "option to remand would be rendered mere surplusage." *Id.*

*Yith* was deemed an "outlier" that failed to meaningfully consider the historical context of the immigration code, namely the race between naturalization and removal. *Id.* at 902. *Yith* also incorrectly concluded that the 1990 amendments expanded courts' powers. *Id.*

After several readings, I find *Ebu* unpersuasive. The court does well to attempt to harmonize Section 1429 with Section 1447(b), but it does so at the expense of harmonizing Section 1429 with itself. Again, Section 1429 provides that "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest ..." 8 U.S.C. §1429. It then goes on to add that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest ...." *Id.* In other words, while there is a broad prohibition against naturalizing those who have an outstanding final finding of deportability, pending removal proceedings pursuant to a warrant of arrest limit only the Attorney General from considering the application.

Reading "Attorney General" out of Section 1429 treats the two distinctly worded provisions as functionally the same. *See Yith*, 881 F.3d at 1162 ("Interpreting the narrower limitation that 'no application for naturalization shall be considered by the Attorney General' to mean the same as 'no person shall be naturalized' would read out the reference to the Attorney General and treat distinct clauses as identical."); *Del Valle*, 2018 WL 4604287, at *2 ("The Court has no authority to read the next provision of the statute, the one at issue here, in a way that disregards the direct qualifier, 'by the Attorney General.'"). And it ignores my duty to give effect to every word of a statute. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 429 (3d Cir. 2018). I am unconvinced that by "Attorney General," what Congress really meant was two separate branches of government. *See Kabura v. McNeer*, 448 F. Supp. 3d 1274, 1282 (D. Utah 2020).

Treating the relevant provision of Section 1429 as limited to the Attorney General also does not restart the race Congress sought to end by its enaction. The race was not between courts and the Attorney General, but rather the Attorney General and those seeking naturalization. *See Gonzalez*, 678 F.3d at 257. As *Ebu* notes, what was once a race is now a sequence. 134 F.4th at 900. But that sequence is the Attorney General's typical sole authority to naturalize followed by two limited instances—delay or denial—in which courts may exercise authority. There are separate one-lane tracks. It is the belated attempt to initiate removal proceedings—in this case over a year after Al Shuwaili's interview and over six months after the complaint was filed—that restarts the race.

Interpreting Section 1429 as capable of wresting away a court's exercise of jurisdiction pursuant to Section 1447(b) further undermines the latter's clear purpose of encouraging expeditious review. *See* 8 U.S.C. § 1447(b); *see also Bustamante*, 582 F.3d at 410 ("The statutory scheme aims to provide USCIS

with an incentive to decide applications in a timely fashion or risk losing jurisdiction to decide those applications in the first instance.”). That incentive would be of little meaning if Section 1429 could be used as a failsafe to retain authority. This concern has previously been raised by the Third Circuit in the context of judicial review pursuant to Section 1421(c). *See Gonzalez*, 678 F.3d at 260–61 (“To hold that district courts are precluded from review by § 1429 whenever removal proceedings are pending raises the possibility that review may be cut off by the actions of the Attorney General.”).

*Gonzalez* similarly concluded that Section 1429's plain text provides no basis to find that it could divest a court of jurisdiction to review under Section 1421(c). *Id.* at 258. And while a district court may not “order the Attorney General to naturalize an alien who is subject to pendent removal proceedings,” Section 1429 does not deprive a reviewing court of the ability to grant declaratory relief. *Id.* at 259–61; *see also Adegbesote*, 2021 WL 5995198, at *8 (finding, in the context of Section 1447(b), that it was not precluded from granting the plaintiff—at minimum—declaratory relief).

Defendants maintain that the declaratory relief deemed permissible in *Gonzalez* has not been extended to Section 1447(b) cases. (Defs.' Mot. Br. pp. 10, 11.) Further, a court's power to naturalize cannot be greater than that of the Attorney General while removal proceedings are ongoing. (*Id.* p. 11.) On the first point, defendants identify no difference in the text of Section 1421(c) or Section 1447(b) that would make declaratory relief appropriate in the former but not the latter. I find none on my own. Indeed, a court's authority under Section 1447(b)—providing blanket “jurisdiction over the matter”—is logically greater than its authority under Section 1421(c) to review denials. *See Dilone v. Nielsen*, 358 F. Supp. 3d 490, 500 (D. Md. 2019).

On the second point, I repeat that there are no removal proceedings pending pursuant to a warrant of arrest. Also, while defendants cite a Second

Circuit opinion for the proposition that a court's power cannot be greater than the Attorney General's while removal proceedings are pending (Defs.' Mot. Br. p. 11), this position is not supported by the plain language of the statute, which makes no mention of courts, *see* 8 U.S.C. § 1429; *see also* Del Valle, 2018 WL 4604287, at *3 (concluding that the text of Section 1429 suggests that district courts' authority is greater than that of the Attorney General when removal proceedings are pending). Congress's choice to replace "naturalization court" with "Attorney General" and otherwise make no reference to courts indicates an intent for courts' authority to extend to areas where the Attorney General's does not. *See Yith*, 881 F.3d at 1164–65; *see also Dilone*, 358 F. Supp. 3d at 501 ("[W]hile some courts have entertained the possibility that Congress meant to constrain not only the Attorney General, but the courts as well, this assumption is at odds with what Congress actually did.").

In short, Section 1447(b) expressly confers jurisdiction on district courts if a determination is not made within 120 days of the examination. *See* 8 U.S.C. § 1447(b); *Adesida v. Tritten*, 535 F. Supp. 3d 857, 860 (D. Minn. 2021); *Dilone*, 358 F. Supp. 3d at 497. Section 1429 does not similarly refer to courts' jurisdiction. *See* 8 U.S.C. § 1429; *Adesida*, 535 F. Supp. 3d at 860; *Dilone*, 358 F. Supp. 3d at 497. "When Congress decides to strip the courts of subject-matter jurisdiction in a particular area, it speaks clearly." *Adesida*, 535 F. Supp. 3d at 860 (quoting *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012)). Because no removal proceedings have been initiated pursuant to a warrant of arrest and, in any case, Section 1429 does not refer to the authority of courts, I conclude that Section 1429 does not strip the Court of its exclusive jurisdiction exercised pursuant to Section 1447(b).[5]

[5] Because I conclude that the Court retains exclusive jurisdiction pursuant to Section 1447(b), I do not consider whether there is jurisdiction pursuant to the Declaratory Judgment Act, Administrative Procedures Act, or Mandamus Act. *See*

### C. <u>Next Steps</u>

Having concluded that my jurisdiction pursuant to Section 1447(b) is exclusive and may not be revoked by Section 1429, I must determine how to proceed.

Section 1447(b) provides that I may either make a determination on Al Shuwaili's application or remand to USCIS with instructions. *See* 8 U.S.C. §1447(b). It does not provide factors to consider or other guidance in determining which option to choose. *Omar*, 756 F. Supp. 2d at 896. My discretion in deciding how to proceed is thus broad. *See id.* Courts that have retained jurisdiction have done so when the delay associated with the application was particularly long. *Id.* (collecting cases) Courts that have remanded have generally done so when some part of the application process had not yet been completed. *Id.* (collecting cases).

If I were to retain jurisdiction, the logical next step would be to schedule a hearing to determine Al Shuwaili's application. *See Dilone*, 358 F. Supp. 3d at 503 (finding that a remand order would conflict with Section 1429 but that it had jurisdiction to determine the plaintiff's entitlement to naturalization). The decision is *Kabura* is instructive in this respect. There, the court held an evidentiary hearing and thereafter made findings of fact and conclusions of law. *Kabura*, 448 F. Supp. 3d at 1276–80. The court granted the application and remanded with directions for USCIS to, among other things, schedule the plaintiff for an Oath of Renunciation and Allegiance and prepare and distribute a certificate of naturalization. *Id.* at 1285–86.

The court persuasively found that this relief was within its authority pursuant to Section 1447(b) and not contrary to Section 1421(a) or Section 1429. *Id.* at 1283. An individual is naturalized when they take the oath and receive

---

*Fernandez v. Chertoff*, Case No. 07–22309, 2007 WL 9702734, at *1 n.1 (S.D. Fla. Sept. 28, 2007).

their certificate of naturalization. *Id.*; *see also Onyekwuluje*, 2023 WL 2589215, at *8 ("United States citizenship status is not acquired until after the oath of allegiance has taken place."); *10 Steps to Naturalization*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/citizenship/learn-about-citizenship/10-steps-to-naturalization (last visited Aug. 24, 2026) ("You are not a U.S. citizen until you take the Oath of Allegiance at a naturalization ceremony."). USCIS remained in charge of facilitating these final steps. *Kabura*, 448 F. Supp. 3d at 1283. Relief did not conflict with Section 1429 because the court—not the Attorney General—considered the application and no removal proceedings were initiated pursuant to a warrant of arrest. *Id.*[6] Rather, relief was limited to review of the application and a determination that the plaintiff satisfied the requirements for approval. *Id.*

Defendants' fallback position is that I should remand to USCIS to decide the application within 45 days. (Defs.' Mot. Br. p. 13.) Courts—including some within this District—have opted to remand pursuant to Section 1447(b) to allow USCIS to make a determination and develop an administrative record. (Defs.' Mot. Br. pp. 13–16; Defs.' Reply Br. pp. 2, 3.)

Defendants' position that the Court should remand for USCIS to make a determination within 45 days offers little comfort. On the very page of their

[6] Similar considerations lead me to conclude that such relief does not conflict with *Gonzalez*'s bar on ordering the Attorney General to naturalize an applicant while removal proceedings are pending. For one, *Gonzalez* dealt with Section 1421(c) as opposed to Section 1447(b). Second, Section 1429 refers only to the Attorney General's *consideration* of a naturalization application. *See* 8 U.S.C. § 1429. And finally, and most importantly, I have concluded that removal proceedings pursuant to a warrant of arrest are not pending. Addressing a similar argument that pending removal proceedings moot a Section 1421(c) petition because the Attorney General cannot be directed to naturalize an applicant, a fellow district court recently concluded that "Section 1429 moots a pending Section 1421(c) petition only if there are pending removal proceedings 'pursuant to a warrant of arrest,' not merely pursuant to a Notice to Appear." *Samuel v. Bondi*, 812 F. Supp. 3d 931, 934–37 (D. Minn. 2025). I agree, albeit in the context of Section 1447(b), that Section 1429 is not implicated and does not restrict the Court from its proposed course.

reply brief in which they propose remand, defendants assert that they "are statutorily prohibited from either approving or denying Plaintiff's naturalization application while he is in removal proceedings." (Defs.' Reply Br. p. 2.) Though I have ruled here that Section 1429 does not apply to this case, remand nevertheless risks placing Al Shuwaili in a continued state of limbo. Defendants have also alleged that Al Shuwaili procured his immigration status by fraud or misrepresentation, which Al Shuwaili maintains is unsubstantiated. (Al Shuwaili's Opp'n Br. p. 5.) Remand for what appears likely to be either continued delay or a denial followed by potential review pursuant to Section 1421(c) only places another hurdle in front of Al Shuwaili and adds further delay to his application. *See Yith*, 343 F. Supp. 3d at 949–50 (referring to notices of intent to deny issued by USCIS).

*Perry* and *Becker*, cited by defendants in support of remand, are unpersuasive for the reasons described above. Defendants also cite a more recent case, *Vu v. Rubio* (Docket No. 25–13469), in which the court granted the government's request to remand. But the government did not assert there that it was unable to render a determination on the plaintiff's application due to Section 1429. The case is thus factually dissimilar and the concerns that I express here regarding continued delay were inapplicable. In any case, the decisions cited by defendants are not binding on me. *See Daubert*, 861 F.3d at 395.

While fellow courts faced with similar considerations have elected to stay proceedings, *see Dilone*, 358 F. Supp. 3d at 503–04, I conclude that the circumstances of this case warrant my retention of jurisdiction to consider Al Shuwaili's application. Notably, defendants do not provide any explanation for the failure to render a determination between Al Shuwaili's August 12, 2024 interview and the December 30, 2025 issuance of the notice to appear. *See Kim v. McAleenan*, Case No. 19–01212, 2020 WL 1026494, at *3 (D. Colo. Mar. 3,

2020) (noting that courts reserve retention of jurisdiction for when USCIS "*unnecessarily* delays the adjudication of an application" and that USCIS had provided no indication that the delay was attributable to an outstanding investigatory step (quoting *Borski v. Lynch*, Case No. 16–00924, 2017 WL 1153997, at *5 (D. Colo. Mar. 27, 2017))). Rather, the cited barrier is pending removal proceedings. But—even presuming that those proceedings are consistent with Section 1429, and they are not—the notice to appear was not issued until over six months after the complaint was filed. Insofar as defendants believe that Al Shuwaili procured his immigration status through fraud or misrepresentation, I presume—and defendants do not represent otherwise—that supporting evidence has already been obtained and further investigation is not necessary to support that assertion. *See Yith*, 343 F. Supp. 3d at 950 (finding that the only disputed issue was a 2011 statement by the plaintiffs' stepmother and it appeared as though the court and parties had all of the information needed to adjudicate the application).

The delay in making a determination on Al Shuwaili's application also leads me to retain jurisdiction. His interview was held just over two years ago, crossing the threshold some courts have found to be unreasonable. *See, e.g.*, *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 657 n.6 (N.D. Tex. 2005). A two-year delay may not be as long as those that have prompted other courts to retain jurisdiction, *see, e.g.*, *Kim*, 2020 WL 1026494, at *3; *Yith*, 343 F. Supp. 3d at 949, but it is also not the shortest, *see Farshchin v. Bondi*, Case No. 25–07146, 2026 WL 1349596, at *4 (N.D. Cal. May 14, 2026) (addressing a one-year delay).

To be clear, the Court appreciates the substantial workload defendants shoulder in processing applications and I make no presumptions as to the reasons for the delay or the post-complaint issuance of the notice to appear. Similarly, and contrary to Al Shuwaili's assertion (Al Shuwaili's Opp'n Br. p. 5), I make no finding of bad faith. Rather, I conclude only that Al Shuwaili's

application was not determined within the timeframe set out in Section 1447(b) and he has appropriately sought a judicial determination. Even if Section 1429 was applicable—and it is not—it would only explain defendants' inaction from December 30, 2025 on. No other reason for delay has been identified.

The Court will therefore hold a hearing on Al Shuwaili's application on October 28, 2026 to continue on October 29, 2026 if necessary. Any evidence that will be presented, and the names of all witnesses who will appear, during the hearing shall be submitted to the Court and the opposing party no later than October 1, 2026.[7] The Court intends to make findings of fact and conclusions of law regarding whether Al Shuwaili meets the requirements of naturalization and order such relief as it deems appropriate and necessary.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss at ECF No. 24 will be denied and Al Shuwaili's motion to compel at ECF No. 28 will be administratively terminated as moot. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: August 27, 2026

[7] Because I will order that all evidence be exchanged in advance of the hearing, I will administratively terminate Al Shuwaili's motion to compel as moot. Al Shuwaili represents that defendants have refused to provide a factual basis supporting his removability. (ECF No. 28–1 (Al Shuwaili's Mot. Compel Br.) pp. 2, 3.) Defendants requested a stay pending their motion to dismiss. (Defs.' Opp'n Mot. Compel pp. 2, 3.) The period between the filing of Al Shuwaili's motion and my decision here effectively served as a stay and defendants' identified reason for a stay no longer exists with my denial of their motion. The parties' requirement to submit all evidence that will be presented during the hearing by October 1, 2026 also affords Al Shuwaili greater relief than the 60–day timeframe requested. (Al Shuwaili's Mot. Compel Br. p. 4.)